IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
Greeneville Division

| | |
|---|---|
| IN THE MATTER OF SEARCH OF ) | |
| STORED ELECTRONIC DATA ) | |
| CONTAINED IN BLACK T-MOBILE ) | No. 2:21-MJ- 25 |
| CELLULAR PHONE WITH ) | |
| IMEI 015727002830926 ) | |
| ) | |

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT AND SEARCH WARRANT

I, Brandon G. Johnson, Task Force Officer, United States Department of Justice,

Drug Enforcement Administration, being duly sworn under oath, states as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I, Brandon G. Johnson, I make this affidavit in support of an application under Rule

   41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the

   examination of property—an electronic device—which is currently in law

   enforcement possession, and the extraction from that property of electronically stored

   information described in Attachment B.

2. I am an investigative or law enforcement officer within the meaning of Section

   2510(7) of Title 18 of the United States Code, that is, an officer of the United States

   who is empowered by law to conduct investigations of, and to make arrests for,

   offenses enumerated in Section 2516 of Title 18 of the United States Code.

3. I am currently employed as a Drug and Narcotics Investigator with the Kingsport

   Police Department, assigned to the U.S. Drug Enforcement Administration (DEA) as

1

a Task Force Officer, and have been so assigned for one (1) year, and two (2) months. Prior to my assignment with the DEA, I was a Drug and Narcotics Investigator and Patrol Officer with the Kingsport, TN Police Department for four (4) years. Prior to my employment with the Kingsport Police Department, I was a Patrol Officer with the Bluff City Police Department in Bluff City, Tennessee for approximately four (4) years. I was trained as a Police Officer at the Walter State Basic Police Academy. While at the Walter State Basic Police Academy, I received training in drug recognition, drug investigation and drug law prosecution. During the last nine (9) years of my law enforcement career, I have attended various classes/courses which specialize in the techniques and laws of criminal and drug investigations. The training included information that directly relates to possession, manufacturing and distribution of illegal narcotics including marijuana, methamphetamine, cocaine, heroin and prescription narcotics. During my employment as a Drug and Narcotics Investigator and DEA Task Force Officer, I have participated in multiple investigations involving the seizure of marijuana, methamphetamine, cocaine and prescription narcotics, the seizure of narcotic related records and other types of evidence that document a criminal organization's activities in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources. Through these investigations, my training and experience, and conversations with other experienced Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard

2

narcotics, to distribute narcotics, and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their narcotics organizations.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF DEVICE TO BE EXAMINED

5. The property to be searched is a black T-mobile cellular phone with IMEI number 015727002830926. This cellular telephone, hereinafter the "Device", was located and seized from the person of BARRY JONES when he was arrested by the Johnson City Police Department on January 30, 2021. The Device is currently located in secure evidence storage at the Office of Homeland Security Investigations (HSI) in the Eastern District of Tennessee.

## STATEMENT OF PROBABLE CAUSE

### Prior Investigation of Barry Jones

6. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of BARRY JONES regarding possible violations of 21 U.S.C. §841(a)(1), distribution and possession with the intent to distribute methamphetamine, a Schedule II controlled substance; 21 U.S.C. §846, conspiracy to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance.

7. During the course of the investigation, Your Affiant has determined that JONES carries a cellular phone and uses it to arrange drug transactions. For example, on

3

October 29, 2020, the 2nd Judicial District Drug Task Force (2nd DTF) conducted a controlled purchase of methamphetamine from BARRY JONES. Agents utilized a Cooperating Source #444 (CS #444) to purchase one (1) ounce of methamphetamine from JONES for $800.00 in Kingsport, TN. CS #444 made the purchases under surveillance and at the direction of law enforcement. Prior to the purchase, CS #444 and vehicle were searched and CS #444 was equipped with a devise to record/ transmit the conversations. After the purchases, CS #444 met with law enforcement and turned over the methamphetamine to officers. CS #444 and vehicle were again searched and CS #444 debriefed. Prior to the transaction, CS #444 communicated with JONES via text messages to cell phone number (276) 870-4739 to arrange the deal.

8. On December 1, 2020, your affiant received subscriber information from T-Mobile for the cell phone number (276) 870-4739. These records reflected that this number was subscribed to BARRY JONES at 231 Rocky Branch Rd., Blountville, TN. On December 8, 2020, a Court Order was obtained in the Eastern District of Tennessee for cellular location data for the device associated with cell phone number (276) 870-4739 (2:20-MJ-200).

9. On December 14, 2020, the 2nd DTF and DEA conducted a controlled purchase of methamphetamine from BARRY JONES at Econo Lodge Room 106 in Kingsport, TN. CS #444 arranged to purchase 189.4 grams of methamphetamine from JONES for $3,000. CS #444 made the purchases under surveillance and at the direction of law enforcement. Prior to the purchase, CS #444 and vehicle were searched and CS #444 was equipped with a devise to record/ transmit the conversations. After the

4

purchases, CS #444 met with law enforcement and turned over the methamphetamine to officers. CS #444 and vehicle were again searched and CS #444 debriefed. During the course of the controlled purchase, Your Affiant was able to utilize the T-mobile location data to confirm JONES' cellular phone was in the area of the Econo Lodge. CS #444 was equipped with a video recording device to capture the buy. Your Affiant reviewed the video after the successful purchase, and observed JONES scooping the methamphetamine that he sold to CS #444 from a much larger bag of a crystal substance believed to be methamphetamine.

10. On January 15, 2021, Officers with the Tennessee Highway Patrol (THP) stopped a vehicle in which JONES was a passenger. The driver of the vehicle attempted to flee from police. During the pursuit vehicle traveled through multiple fields on private property and ultimately crashed into a creek. Approximately 46.4 grams of suspected methamphetamine (gross weight including packaging) were found in the vehicle and approximately 493.5 grams of suspected methamphetamine (gross weight including packaging) more were found in the field through which the vehicle had fled. The vehicle also contained approximately $17,000 cash, a firearm and 6 cellular phones. JONES was arrested for various charges including possession of methamphetamine with intent to resale, but bonded out of jail shortly after his arrest.

January 30, 2021 Arrest

11. On January 30, 2021, at 12:16 am, Officer Pellien and other officers with the Johnson City Police Department (JCPD) responded to 119 Pinnacle Drive, Johnson City, TN (Quality Inn). Officers with the JCPD had been made aware of a federal warrant that had been obtained for Barry JONES charging JONES with distributing 50 grams or

5

more of methamphetamine (21 USC 841), possession with intent to distribute 50 grams or more of methamphetamine (21 USC 841), and possession of a firearm in furtherance of a drug trafficking offense (18 USC 924). An investigation by the JCPD revealed that JONES was staying at the Quality Inn in room 411.

12. Officer Pellien, and other officers with the JCPD, conducted a knock and talk at room 411 in an attempt to locate JONES. JONES came to the door, and officers cleared the room for other occupants, locating Alma Nicole Cradic BOWERS. Both JONES and BOWERS were detained. While detained, BOWERS asked to sit in the hotel room due to the inclement weather. Officers checked the area that BOWERS was going to sit and located 2 firearms, 3 syringes, a glass pipe, baggies, a scale, and approximately 10.13 grams of a white crystal substance consistent with crystal methamphetamine.

13. JONES and BOWERS signed a written Miranda warning and agreed to further questioning. BOWERS stated that she was picked up by JONES in Asheville, NC on January 29, 2021, and JONES brought her back to the Quality Inn. BOWERS further stated that she was unaware of any drug use or firearms, but BOWERS did notice that JONES had a box of ammo. JONES had a corroborating statement, however, JONES stated that he didn't know who the firearm or drugs belonged to.

14. An inventory search of JONES belongings revealed approximately (98) .357 rounds, (6) .380 rounds, and (9) 9 mm rounds of ammo. A records check of the firearms revealed a Taurus HX45156 that was recovered had been reported stolen from a vehicle burglary in Kingsport, TN. Jones is a convicted felon who is not allowed to possess firearms. JONES and BOWERS were arrested.

6

15. JONES was also in possession of a black T-Mobile cellular phone (the Device). The Device was stamped with IMEI identifier 015727002830926. The Device was taken with the other evidence and logged into storage at the JCPD.

16. The Device is currently in the lawful possession of Homeland Security Investigations (HIS). On February 12, 2021, JCDP released the Device to Special Agent John Bulla who placed it in the HSI evidence storage vault located in Carter County, Tennessee. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of JCPD.

## CELLULAR PHONES AND DRUG TRAFFICKING

17. Based on my training and experience, I know that those involved in drug trafficking activities commonly use cellular telephones, to include the text messaging capabilities, to contact others to discuss and arrange drug transactions and to further their illicit drug business. I know that people in the use and distribution of controlled substances maintain records relating to their drug trafficking activities in their cellular telephones. I know that narcotics traffickers also keep stored messages, videos, and pictures, and telephone numbers relating to their drug trafficking activities within their cellular telephones. These individuals routinely use cellular telephones to communicate with other individuals concerning various aspects of the use and distribution of controlled substances.

## TECHNICAL TERMS

18. Based on my training and experience, I use the following technical terms to convey the following meanings:

7

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include

8

various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the

9

current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

10

19. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSICE ANALYSIS

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

11

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

12

<u>CONCLUSION</u>

23. Based on the foregoing, I submit that there is probable cause to believe that the Device contains evidence of drug trafficking, specifically violations of Title 21 USC 841(a)(1) and 846, Distribution of Methamphetamine and Conspiracy to Distribute Methamphetamine, respectively.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Brandon G. Johnson
Drug Enforcement Administration, Task Force Officer

Subscribed and sworn to before me by telephone on February *17*, 2021.

CYNTHIA RICHARDSON WYRICK
United States Magistrate Judge

13

## ATTACHMENT A

The property to be searched is a black T-mobile cellular phone with IMEI number 015727002830926. This cellular telephone, hereinafter the "Device", was located and seized from the person of BARRY JONES when he was arrested by the Johnson City Police Department on January 30, 2021. The Device is currently located in secure evidence storage at the Office of Homeland Security Investigations (HSI) in the Eastern District of Tennessee. This warrant authorizes the forensic examination of The Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

Specifically, the items to be seized include data found in the storage medium of the Device, specifically the data described below:

1.    All records stored on the Device described in Attachment A that relate to violations of Title 21 U.S.C. § 841(a)(1), 21 U.S.C. 846, including:

  a.  Lists of customers and related identifying information;

  b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  c.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  d.  Phone numbers and/or contact information for associates;

  e.  Photographs depicting drugs, drug paraphernalia, drug proceeds, firearms or known drug associates and coconspirators;

  f.  Text messages related to drug activity, illegal possession of firearms or probative of conspiracy to distribute drugs;

  g.  Evidence of user attribution showing who used or owned the phones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.